P. POSS *v.* THE WESTERN ASSURANCE COMPANY.

INSURANCE. *Policy. Conditions. Construction.* A policy of insurance against fire on the boiler, engine, machinery, tools, &c., of a manufacturing company, in a particular building in which they were making furniture, provided that it should become void if the premises became unoccupied and so remain for more than thirty days without the assent of the company endorsed thereon; or if it be a manufacturing establishment   *   *   and shall cease to be operated without special agreement endorsed thereon: *Held,* that the latter clause meant a permanent cessation of operations, not a temporary ceasing occasioned by the prevalence of an epidemic.

FROM HAMILTON.

Appeal in error from the Circuit Court of Hamilton county.   D. C. TREWHITT, J.

DEWITT & SHEPHERD for Poss.

BARTON & SON for Company.

COOPER, J., delivered the opinion of the court.

The Chattanooga Chair and Furniture Factory, a corporation, took out a policy of insurance for six months from May 6, 1878, in the Western Assurance Company, for $1,000, against loss by fire, on its boiler, engine, machinery, tools, &c., in a building in the city of Chattanooga, in which the corporation was manufacturing furniture. The loss was, by the terms of the policy, to be paid the plaintiff P. Poss. The property insured was destroyed by fire on October 19,

Poss *v.* Insurance Company.

1878. This action was brought upon the policy to recover the insurance money. The policy provided that it should become void "if the premises become unoccupied and so remain for more than thirty days without the assent of the company endorsed thereon; or, if it be a manufacturing establishment, running in whole or in part over or extra time, or running at night, or if it shall cease to be operated without special agreement endorsed on this policy."

The defendant pleaded to the declaration, among other pleas, that one of the conditions of the policy was that it should become void if the manufacturing establishment, the property insured, shall cease to be operated without the special agreement of the insurance company endorsed on the policy, and that the operation of the said manufacturing company did cease without the assent of the defendant. The plaintiff filed to this plea a replication that the manufacturing establishment was not operated by reason of the prevalence of an epidemic of yellow fever at Chattanooga, proclaimed and prevailing on the — day of October, 1878, and from the — day of — until it was conconsumed by fire, and that before it ceased to be operated the agent of the insurance company at Chattanooga had left the city to escape the epidemic, and plaintiff made unsuccessful efforts to ascertain where he had gone to give him notice that the operation of the factory had ceased, and to procure the assent of the insurance company on the policy. The defendant demurred to the replication, assigning as causes of demurrer—1st, that the parties had made no exception

in the contract on account of epidemics; and 2d, that the replication does not show that the manufacturing company had not ceased before the breaking out of the yellow fever, and remained stopped for more than thirty days. The circuit judge sustained the demurrer. Issue having then been joined on a traverse of the plea, it was agreed by the parties that the court should find the issue in favor of the defendant, it being admitted by the plaintiff that said factory ceased to be operated, as in said plea alleged, for eleven days prior to the burning, and that the court should render judgment accordingly. It was further agreed that if, upon appeal in error, this court should sustain the holding of the circuit judge on the demurrer, then final judgment affirming the judgment should be entered; but if this court should be of opinion that the ruling of the circuit judge on the demurrer was erroneous, then the judgment should be reversed and the cause remanded, with leave to the defendant to rejoin, and plead to issue on said special replication, and for a trial on all the issues joined in the cause. The circuit court found the issue on the particular plea in favor of the defendant, upon the admission of the plaintiff that the factory ceased to be operated, without the consent of the defendant, for eleven days before the loss by fire, and rendered judgment accordingly. The plaintiff appealed in error.

The second cause of demurrer is clearly not well taken. The replication sufficiently avers that the cessation of the manufactory to be operated was by reason of the prevalence of the yellow fever, that the

fever was proclaimed and prevailed as an epidemic in October, 1878, and so continued until the property insured was consumed by fire.    The real contest is over the first cause assigned, that the parties had made no exception in the contract on account of epidemics.

The point which the parties desire to have determined, which has been argued before us, and which is, though inartificially, made by the pleading, is whether, under the terms of the policy, a temporary cessation of the operation of the chair and furniture factory of the insured, by reason of the prevalence of the yellow fever in epidemic form, would avoid the policy.    In other words, whether the condition of the policy, that it shall become void if the manufacturing establishment insured "shall cease to be operated," applies only to a permanent and not a temporary cessation of the operations of the establishment.    And we are very clearly of opinion that the policy contemplates, in this connection, only the permanent ceasing to be operated.    The language is, "cease to be operated." If the letter of the contract be alone looked to, the cessation of work on Sunday, the stoppage of operations by the necessity of cleaning out the boiler, by an accident to the machinery, or by a strike of the hands, might be held to vitiate the policy.    Of course, the parties never contemplated such a construction of their words, nor has the argument submitted on behalf of the defendant gone to that length.    But if a temporary cessation to operate the establishment, by reason of these and other common occurrences, would

not avoid the policy, it can scarcely be successfully maintained that a temporary cessation occasioned by the visitation of Providence in the form of a deadly epidemic shall have a greater effect. The whole clause of the policy, which we have quoted above, shows that the parties contemplated a permanent cessation of operations. The language used is the language of the insurance company, and must be taken most strongly against the company whenever it admits fairly of two constructions. It could never have been intended to apply to a ceasing to operate occasioned by the usual incidents to the business, among which would be the impossibility of procuring operatives temporarily for any cause. The clause in question, moreover, probably exclusively applies to an insurance of the building in which manufacturing is carried on, and not to an insurance of the boiler, machinery, etc., as in the case before us.

The circuit judge erred in sustaining the demurrer to the replication, and the judgment must be reversed, and the cause remanded for further proceedings.